## H. KEMPNER v. ADVANCE THRESHER COMPANY.

Decided November 3, 1906.

### 1.—Contract—Modification—Evidence.

Defendant contracted in writing to buy certain machinery from the plaintiff; by the terms of the contract the machinery was to be paid for cash, and the purchaser bound herself to give notice of any defects in the machinery within five days after beginning to use the same; the contract of purchase was canceled by the purchaser, as she had a right to do under the terms of the same. Subsequently negotiations for the purchase of the same machinery were renewed by correspondence between the parties, the purchaser agreeing to pay cash for the machinery as soon as it was accepted, and stipulating that she wanted some time to run it before accepting it, and that she would only pay for it when it proved satisfactory, but using the following expression in the last letter: "We have decided to order from you the Advance Separator, or rather to let our order stand which we now have in our possession." Held, that the terms of the original contract were inconsistent with the stipulations of the correspondence, and the statement in the last letter of the purchaser that she had decided to let the original order stand must, in view of the other portions of the correspondence, be construed to mean that the original order, as modified by the conditions imposed in said letters, might stand.

### 2.—Contract—Construction.

In construing a written contract it is always necessary to consider every part of the writing, and, if possible, to harmonize and give effect to the whole.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*Kleberg, Davidson & Neethe,* for appellant.—Parties to a written instrument have the right to abrogate the same by mutual consent either by parol or writing subsequent to the date of a written contract, or to enter into a new contract which partially embodies the terms of the old contract so abrogated and adds thereto new conditions and provisions. Cohen v. Continental Fire Insurance Co., 67 Texas, 328; Davis v. Dallas Bank, 7 Texas Civ. App., 46; Anderson Electric Co. v. Cleburne Water Co., 27 S. W. Rep., 506; Id., 44 S. W. Rep., 929.

In construing a written contract each and every part of the writings constituting it must be taken together, and no one part can be singled out. Knapp v. Patterson, 14 Texas Ct. Rep., 321; Hearne v. Gillet, 62 Texas, 26; Swank v. San Antonio & A. P. Ry., 1 Texas Civ. App., 675, 682; Texas & N. O. Ry. v. Demilley, 41 S. W. Rep., 148.

*Baker, Botts, Parker & Garwood,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against appellant to recover the contract price of a threshing machine and automatic stacker, together with the freight charges paid by appellee upon said machines. The price of the machines is alleged to be $835 and the freight paid by appellee $91.20. The plaintiff declared upon a contract for the sale of said machinery made by the plaintiff and defendant on January 31, 1903, and alleged that the machinery was sold and delivered to the defendant under said contract.

The defendant answered by general and special exceptions and general denial, and pleaded specially that the contract sued upon was canceled and abrogated by agreement of the parties, and that the machinery was sold and delivered to defendant under a subsequent contract entered into between the parties on or about June 8, 1903, and that there had been such breach of the expressed and implied warranties contained in said contract as relieved defendant from the obligation to pay the contract price of the machines.

After the hearing the evidence upon the issue of whether the machines were sold under the contract declared upon, the trial court refused to hear evidence offered by the defendant for the purpose of showing that there had been a breach by appellant of the warranties contained in said contract, and instructed the jury to find a verdict in favor of plaintiff for the amount claimed in the petition, and upon the return of such verdict a judgment was rendered in accordance therewith.

It is conceded by appellant that unless the contract of January 31, 1903, was modified by a subsequent agreement between the parties the judgment of the trial court is correct, because under the terms of that contract as originally made appellant has failed to give the notice required and return the machinery in time to entitle her to make any claim against appellee for breach of warranty in the sale of the machinery.

The evidence upon which the trial court held that the machinery

was sold under the contract as originally made on January 31, 1903, is as follows: The execution of the original contract was admitted, and it was further admitted that defendant, as she was entitled to do under the terms of the contract, countermanded her order for the machinery on May 6, 1903, and this order of countermand was accepted by plaintiff. Subsequent to this cancellation of the original contract the following correspondence was had between defendant and Foley, the general manager of plaintiff:

Letter from Kempner to Foley, dated May 27, 1903: "Replying to your letter of recent date, we are willing to place the order for a thresher with you, but there are some conditions attached to which we must first call your attention. You quoted us a 32 x 52 Advance Thresher together with band cutter and feeder and automatic weigher and bagger for $600, together with an additional charge of $235 for the wind stacker.

"We want to know first, whether you can not reduce this price. In other words, since this controversy arose, we have been quoted a machine a good deal cheaper than this one that we think will do as good work and would like to know the very best price you can make us on this machine.

"Furthermore, we would like to know how much rice you will guarantee us that this machine will thresh in a day, taking into consideration, of course, that the machine is properly fed and rice in fairly good condition.

"On the provisional order which we placed with your Mr. Drake we were to pay cash for the machine. We are still willing to do this should we order it, meaning by this that we will pay cash as soon as the machine is accepted. In other words, we want to have some time to run the machine before we can accept it and as soon as we do accept it are willing to pay cash.

"Should we place this order we would of course depend on you to get us at a reasonable price a good experienced thresherman to run our machine during the year.

"Please let us hear from you fully in regard to the above matters, and furthermore, you might quote us on the next largest size machine, stating how much per day this largest size machine will thresh."

Answer from Foley dated June 3, 1903: "We have yours of June 2d and also May 27th, but as the writer was out of town it has not been answered. You ask if we can not reduce the price which was given in the order taken by Mr. Drake, and state that you have been quoted a machine a great deal cheaper than this, and one that you think will do as good work. That you have been offered for less money we have no doubt in the least, but if the party offered you a machine that would do as good work it must be something manufactured since last harvest for they did not have anything on the market then that would anywhere near compete with our goods, and in regard to price we have only one price, and can not afford to try and compete in prices with all the different makes of machinery, some of which can not thresh rice at all. As to how much rice the machine you ordered would thresh, that depends a great deal on the condition of the grain. Over five hundred sacks have been threshed by

that machine quite frequently in Louisiana in favorable circumstances, but three and fifty to four hundred would be a good average threshing. The next size larger than this would be 36-60 separator, which would thresh seventy-five to one hundred sacks more per day in the same kind of grain.

"You state that you would depend on us to get you a man to run the machine during the season at a reasonable price. It is our impression that we can get you a man without any trouble, as we most always have a great many applications from machine men in different parts of the country for a position here during harvest, but we do not believe, however, that we could get you a man for less than $3.50 a day, as it is no trouble for an experienced man to get that amount of money here in Louisiana.

"We will have our special rice circulars in the latter part of this week, and would especially request that you wait until we send you a copy of it, as this will give you an opportunity to see for yourself more than we could tell you what our machinery is, and what it has done in the rice district."

Kempner's letter to Foley dated June 8, 1903: "We have your letter of the 3d inst. We have decided to order from you the 32 x 52 Advance Separator, or rather to let our order stand which we now have in our possession. We wish to state, however, that we expect of course a man to come with this machine to set same up and start it properly, and furthermore we expect you to get us a man to thresh our crop for us which you say you can do for about $3.50 per day, and as stated in our previous letter, we will pay cash for this machine but only when it shows up satisfactorily; in other words, the trouble which we had last year must be overcome before we can pay for this machine, and we trust all this will be satisfactory. You are at liberty to order out the machine for us as early as possible. Our crop is rather early compared with the others and we will be very glad if you could get this thresher in on a carload basis so we can save freight.

"Awaiting an early reply acknowledging receipt of this, we remain."

Shortly after the receipt by appellee of appellant's letter of June 8 the machinery was shipped to and received by appellant.

The statement in the letter of May 27 to the effect that appellant was willing to pay cash for the machinery as soon as it was accepted, but that she wanted some time to run it before she would accept it, and in the letter of June 8 ordering the machinery, that she would only pay for it when it proved satisfactory, is entirely at variance with the terms of the original contract which required the purchaser to give notice of any defect in the machine within five days after the day of its first use by registered letter addressed to appellee, and provides that "Continued possession of said machinery for five days, without said notices, or failure to return said machinery, as above provided, shall be conclusive evidence that all warranty has been fulfilled, and the purchaser hereby releases all claim for damages and the right to return the machinery after said time, and any and all right or claim to recoup for any damages or injury in any suit brought to collect the purchase price."

It seems clear to us that the very object and purpose of these statements in the letters of appellant was to inform appellee that she would

not purchase and pay for the machinery without having ample or at least a reasonable time in which to test its efficiency, and the recitals in the letter of June 8 that she had decided to let the original order stand, must, in view of the other portions of the correspondence, be construed to mean that the original order as modified by the conditions imposed in said letters might stand.

It is always necessary in construing a written contract to consider every part of the writing and if possible to harmonize and give effect to the whole. We think under this rule of construction the trial court erred in holding that the letter of June 8, above quoted, reinstated the original contract without change or modification. (Hearne v. Gillet, 62 Texas, 26; Swank v. San Antonio & A. P. Ry. Co., 1 Texas Civ. App., 675; Knapp v. Patterson, 14 Texas Ct. Rep., 321.)

Under our construction of the contract the appellant had the right to show that the machinery was not capable of performing the work which it was warranted to do, and to avail herself of any defense to the suit arising out of any breach of warranty on the part of appellee which could be shown.

We are of opinion that the judgment of the court below should be reversed and the cause remanded and it is so ordered.

*Reversed and remanded.*