S. W. 282; .Locklin v. State, 75 S. W. 306; Millner v. State, 72 Tex. Cr. R. 45, 162 S. W. 351; Millner v. State, 75 Tex. Cr. R. 22. 169 S. W. 902; Howard v. State, 79 Tex. Cr. R. 267, 184 S. W. 507. On both and each of said grounds the court's action presents no reversible error.

[3] Appellant has another bill complaining of the action of the court in overruling his motion for a continuance on account of the absence of another witness. The state contested this motion. This question cannot be considered, in the absence of a statement of facts, as has all the time been held by this court. Besides, in hearing the contest, the evidence heard by the judge must be held to have been sufficient to have justified his action. What testimony was heard is not shown by the bill or the record otherwise.

The judgment is affirmed.

---

TRINITY COUNTY LUMBER CO. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited.     (No. 7569.)

(Court of Civil Appeals of Texas. Galveston. June 14, 1918. On Motion for Rehearing, Oct. 31, 1918.)

1. INSURANCE ☞512—INSURANCE OF MASTER AGAINST WORKMEN'S COMPENSATION CLAIMS—RISKS COVERED.

Where insurer insured employer against losses under Workmen's Compensation Act, § 21 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246xxx), but employer failed to give notice as required by section 19 (article 5246x), so as to bring his workmen within the act, and was held liable as at common law, he could not recover an additional sum of the insurer, who had paid the schedule amount, since his own negligence permitted the servant to recover more.

2. INSURANCE ☞435—INSURANCE OF MASTER AGAINST WORKMEN'S COMPENSATION CLAIMS—RISKS COVERED.

Policy insuring master for injuries to employés, together with binders and amendments attached after the enactment of Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), held to contemplate indemnity against losses under the act only and according to its schedule of compensation.

3. INSURANCE ☞435—INSURANCE OF MASTER AGAINST WORKMEN'S COMPENSATION CLAIMS—RISKS COVERED.

Where defendant had insured plaintiff against injuries to its employés, and the contract was changed subsequent to the enactment of Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), charging a larger premium, it did not continue original liability as well as liability under the act.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by the Trinity County Lumber Company against the Ocean Accident & Guarantee Corporation, Limited. From the judgment rendered, plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, Ellis P. Collins, and C. L. Carter, all of Houston, for appellant.

Earl Wharton, of Houston, for appellee.

GRAVES, J. The Trinity County Lumber Company's employé, Garrison, while in the discharge of his duties as such, was injured on September 11, 1913. He declined to accept the compensation he would have been entitled to under the Texas Workmen's Compensation Law (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), claiming that he had a cause of action against that company for a much larger amount as damages, because of its failure to give him the required notice of its having become a subscriber under the terms of that act. The Lumber Company and the Ocean Accident & Guarantee Corporation, appellant and appellee here, respectively, both of whom were foreign corporations with permits to do business in Texas, under a special agreement between themselves, hereinafter more fully referred to, united in making a settlement out of court with Garrison for $11,000, of which the Lumber Company paid $7,400 and the Guarantee Corporation paid $3,600.

The Lumber Company then brought this suit against the Guarantee Corporation, which right had been reserved in their special agreement, to recover the $7,400 so paid by the former, and interest thereon, basing its claim therefor upon certain contracts of insurance alleged to have been issued to it by the appellee corporation.

By way of answer, in addition to certain exceptions, denials, pleas of limitation, and breach of warranty, the Guarantee Corporation specially charged that the $7,400 paid Garrison by the Lumber Company, in order to effect such compromise settlement, had been voluntarily done upon its part, and not in response to any legal obligation, in that, being a subscriber under the Compensation Act, it could have rightfully refused to pay any sum whatever under the protection afforded by that statute; that its own liability (the appellee's) was, under the insurance contracts then existing between the two companies, limited to the schedule of benefits provided by the Workmen's Compensation Act, which aggregated the $3,600 already paid; but added, in the form of a cross-action, in event the court should find that no contract of insurance at all was in effect between the two companies at the date of Garrison's injury, September 11, 1913, a further plea, seeking recovery of the $3,600, less premiums collected, as having been paid through mistake.

The case was tried before the court without a jury, resulting in a judgment denying the Lumber Company a recovery, and providing that the Guarantee Corporation take

nothing on its cross-action. The Lumber Company appeals.

Since the appellee neither took exception thereto below nor complains here of the trial court's adverse finding upon its alternatively pleaded cross-action, that matter passes out of the case, leaving, as we think, but one real question presented by the appeal, and that is: Did the court err in its conclusions of law "that the policy, EC–501507, the various binders referred to, and policy EY–4480, witness the existence of a policy on September 11, 1913, of insurance under the Texas Workmen's Compensation Act, and not, in addition thereto, a general indemnity against liability to employés not arising under said act; (2) that defendant is liable to pla'ntiff for the amount to which its injured employé was entitled under said act?"

After careful consideration of the entire record, including the helpful briefs and arguments for both litigants, the conclusion is reached that it did not, and an order affirming the judgment below has been entered. Accordingly, it is thought that what is deemed a sufficient statement of this court's reasons for the view taken should properly conclude its opinion, without seriatim and detailed discussion of the various assignments of error presented.

In other words, if by the contracts of insurance in force and effective as of the date of September 11, 1913, between these two corporations, it may fairly be said to have been their intention that the liability paid for by the one and assumed by the other should be such only as the Texas Workman's Compensation Law then imposed upon insuring companies carrying such risks as materialized in Garrison's injury, the main contention of appellant here would fall, and with it, we think, all subsidiary ones.

While from several slightly different viewpoints appellant devotes the first seven and the tenth assignments in its brief to the contention that such was neither the purpose nor effect of the contracts, but that they evidenced an undertaking to indemnify it against unlimited liability at common law in addition to that imposed by the Workmen's Compensation Act, it yet insists under the eighth assignment that, even if the contracts did limit the liability to such only as arose under that statute, general liability would still follow from a proper construction of the express provisions of the act itself.

[1] Although unable to agree that the Compensation Law may properly be so construed, what otherwise seems to us a complete answer to this last-stated position is the fact that Garrison was not settled with according to that act, but wholly outside of its provisions, a result directly caused by appellant's own and negligent failure, which it admitted, to bring him within its terms by giving him the required notice that it had provided for payment of the compensation thereunder, thereby leaving open to him a cause of action against it for damages at common law. The act not only made the giving of such notice obligatory upon appellant as a subscriber (Vernon's Sayles' Statutes, art. 5246x), but further provided that a subscriber who has complied with all the rules, regulations, and demands of the association may recover from it, or from a member of it carrying the risk, whatever damage such subscriber has been required to pay an employé by any judgment of a court of law, thus apparently denying to one who has not so complied any other recovery than the schedule of benefits prescribed in the act for employés (article 5246xxx). If the settlement had been made in accordance with that schedule, it is not denied that the $3,600 paid by the appellee would have been all Garrison was entitled to. Moreover, the final policy formally bringing the insurance here contracted for under the terms of the Compensation Law, EY–4480, hereinafter more fully referred to, specially provided that the limit of liability thereby assumed for injury to employés should be that fixed by the terms of the act itself.

Consequently, with the decks stripped back again, as we think, to the single issue of their purpose and meaning, return is made to an examination of the contracts themselves. The trial court's findings of fact, after a full review of the various policies and binders, together with the dealings between the parties concerning them, was:

"I also find that it was the intention of the parties that a contract of insurance was to be had in accordance with the Texas Workmen's Compensation Law."

[2] Following a like examination of the statement of facts, we cannot agree with the special insistence of appellant under its 10th assignment that this finding was without support in the evidence, but, holding that it was, adopt it as the finding of this court also. The first policy issued between the parties, EC–501507, commonly known as a "manufacturer's employés liability policy, exclusive of workmen's compensation," bore date of April 25, 1913, at which time there was no Workmen's Compensation Law in effect in Texas, and specially recited that it did not cover liability under any Workmen's Compensation Agreement Plan or Law. It covered the period from May 1, 1913, to May 1, 1914, and limited the corporation's liability for injury to or death of one person to $5,000, and its total liability for one accident, without reference to the number of persons, to $10,000. This policy, as thus written, remained in force and effect until midnight of August 31, 1913, when, to meet the situation brought about by the fact that in the meantime a Workmen's Compensation Act had been passed in Texas, which would become effective on September 1, 1913, following out agreements by correspondence for that purpose, a binder, No. 29210, bearing date of August 28, 1913, was delivered and

took effect, its term expiring on September 10, 1913, which specifically recited that—

"The Ocean Accident & Guarantee Corporation hereby acknowledges itself bound by a liability and workmen's compensation insurance undertaking, the subject-matter of the insurance being described in the following schedule; and during the term of this binder the actual contract of insurance shall be evidenced by such of the printed policy form blanks in use by the corporation during such term as are indicated by the letters given in the schedule."

In the schedule referred to under the words "Policy Form" were typed the words "Workmen's Compensation"; after the words "Limited of Liability" were the following: "One person $———one, accident—none"; under the words "Description of Risk" were typed the words, "This binder shall constitute the assured a subscriber within the meaning of the Texas Workmen's Compensation Act."

At the expiration of binder 29,210, it was renewed by a second one of the same wording and duration; that is, covering the period from September 10 to September 20, 1913. Then, on September 22, 1913, Workmen's Compensation Endorsement No. 141233, made by its terms to cover the date of Garrison's injury, September 11, 1913, was issued, containing, among lengthy recitals, these provisions:

"The said policy is hereby extended to include within its terms all obligations imposed upon or assumed by the assured under any of the provisions contained in the said act in so far as the same shall have reference to the subject-matter of this insurance.

"The assured has elected to accept and has accepted, in the manner provided in the Workmen's Compensation Act, hereinafter in this paragraph designated, the schedule of workmen's compensation benefits therein contained; and the assured further warrants that this acceptance will not be revoked during the period that this indorsement is in effect: Chapter 179, Laws of 1913, State of Texas, commonly known as the Texas Workmen's Compensation Law."

Lastly, on October 20, 1913, there was issued and delivered the final form of policy used, EY-4480, which by its terms was made retroactive so as to be effective from and after September 1, 1913. This policy also contained the identical provision relating to acceptance of the schedule of benefits appearing in the workmen's compensation indorsement last above quoted from, No. 141233, and the additional one:

"If any condition in this policy contained is at variance with any provision of the Workmen's Compensation Law or Laws designated in Declaration 7, such specific statutory provision shall be substituted for such condition."

It thus appears that not only did all binders issued between August 28 and October 20, 1913, specifically recite that the Insurance Corporation acknowledged itself bound in accordance with the Compensation Act, such obligation to be evidenced by its printed policy form blanks in use during that period, but, after expressly providing against conflicts with that act, the final policy itself, as well as the binder immediately preceding it, correspondingly required an acceptance by the assured of the schedule of benefits therein prescribed; in other words, the plain purpose was, as we think, and the trial court found, to so change the insurance existing prior to the taking effect of the new Compensation Law, on September 1, 1913, as to substitute in such case as here arose its schedule of compensation for the pre-existing liability. Indeed, the general agent of the appellee so testified, his statement, which was not controverted, being epitomized in these excerpts:

"The binder that was attached to the first policy was issued merely until we could get the second policies. You see when that manual became effective, or the law became effective on the 1st of September, some companies went to work and canceled their policies outright and rewrote them from the 1st of September to the following 1st of September. Our office didn't do that, because I didn't want all our business bunched up in one month so I could not handle it, and so we conceived the idea of indorsing our policies from the date of August 31st and increase the rate or decrease it, and on all of our liability policies covering them by that indorsement into compensation policies, and in cases where we didn't do that we issued a binder. The binder was intended to be the contract in force between the parties as from the date of the issuance of the binder."

"It says here, 'This binder shall constitute the assured a subscriber within the meaning of the Texas Workmen's Compensation Act,' so that that binder converts this policy into a compensation policy."

The act itself provided that any insurance company should have the same right to insure the liability to pay the compensation therein prescribed as the association created under it, and, when it did so, might exercise the same powers, but should be subject to parts 1, 2, and 4, and sections, 10, 17, and 21, of the Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246u, 5246ww, 5246xxx), and must file with the Commissioner of Insurance and Banking its classification of premiums to be charged, none of which could take effect until approved by that official as being adequate to the risks assumed, nor could they be greater than those charged by the association (Vernon's Sayles' Statutes 1914, art. 5246yyyy).

It was further shown that at the time the act became effective neither the insurance companies nor the various state agencies charged with its administration had had opportunity of becoming familiar with its operative details, and the Industrial Accident Board had not then completed the forms of insurance contracts and the manual of rates to be used; hence, under the above-stated plan it had adopted to meet this condition, the appellee could only issue binders until at a later date in position to deliver a permanent policy, in accordance with the compensation law, and as approved by the Industrial Accident Board, at rates by it prescribed. This was all done in the policy of October 20, 1913, EY-4480, the trial court making this finding as to the rates charged:

"The amount of the premium paid for said policy was in accordance with the schedule or manual of rates filed by the defendant company

with the Commissioner of Banking and Insurance and with the Industrial Accident Board as the rates to be charged by them for the writing of insurance upon the plants of this character in accordance with the Texas Workmen's Compensation Act."

There is not only no attack made upon this finding as to the rate paid by the Lumber Company for the insurance here involved, but there was no evidence upon which a different one could have been based.

In support of its contention that the various binders attached to original policy EC–501507, together with final policy EY–4480, did not limit the insurance contracted for to workmen's compensation liability, but merely extended it so as to cover that liability also, the Lumber Company lays much stress upon the clause in the binders that the insurance corporation "acknowledges itself bound by a liability *and* workmen's compensation insurance undertaking," insisting that the conjunctive form of expression would not have been used if the intention had not been to provide for both a general and a workmen's compensation liability. While that appears to be an introductory recitation, descriptive merely of the change made in the character of the insurance, if it is to be given further meaning we think it may be explained as having reference to that section of the act permitting an unlimited recovery of exemplary damages, reading as follows:

"Nothing in this act shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife and heirs, or such of them as there may be, of any deceased employé, whose death is occasioned by homicide, through the willful act or omission or gross negligence of any person, firm or corporation, the employer of such employé at the time of the injury causing the death of the latter, and in all cases where exemplary damages are sought under this section, in case the injured party has already been awarded, actual damages by the board herein provided, said fact and said amount so received shall be made known to the court or jury trying said cause for exemplary damages; and on the issue for exemplary damages he shall have the same defenses as under the existing law." Vernon's Sayles' Statutes 1914, art. 5246j.

Therefore, in writing insurance in accordance with this statute, the corporation was by its express terms not only bound by the fixed schedule of compensation to be paid in particular cases for specified injuries, but for the unlimited amount recoverable as exemplary damages. It is, however, not contended here that Garrison's injuries occurred under any such circumstances as made that provision of the statute applicable to his cause of action.

[3] Another most earnestly and ably presented argument is that, because there was a largely increased premium rate required to be paid on this new insurance, after September 1st over that charged under the previous contract and pre-existing law, it must have been intended to both continue the liability formerly carried and to add that imposed by the compensation statute. The obvious answer to this suggestion is that, under the undisputed evidence, no part of the premiums paid after September 1st was in fact paid for any other insurance than that in strict compliance with the compensation law, but was such only as had been officially promulgated by the Industrial Accident Board as the authoritative rate for insurance in conformity therewith, neither more nor less than which could be legally charged. From this situation the necessary result would be that, if appellant did so get and retain insurance under both systems after September 1st it had the continuing benefit of the kind first carried for nothing.

Furthermore, other reasons than the one suggested by appellant for higher rates under the new system are easily supposable; indeed, the possibilities suggested by the conditions here involved indicate at least one. Under the old policy it had protection for only $5,000 on each employé injured, in no event to exceed $10,000 for any one accident, no matter how many were injured therein; that is, the insurance company, for the rate charged on that policy, limited its maximum liability in the circumstances stated to $10,000, even though 100 employés should sustain damages of $5,000 each, totaling $100,000 for only 10 per cent. of which it would be liable, leaving the Lumber Company to pay the remaining $90,000; whereas, if the latter company had brought this supposed contingency under the operation of the Compensation Law, and had complied with the requirements thereof by so notifying its employés, the entire $90,000 might have been saved.

Such possibilities might well furnish mutual justification for far greater relative increase in rates than is here claimed to have obtained, to the assured in paying it because of the immunity afforded, and to the insurer in charging it in view of greatly enlarged liability.

So that, considering all the clauses, conditions, and stipulations of these contracts together, and then giving them such interpretation as reasonably appears to harmonize with the intention of the parties, we think the trial court stated a correct conclusion. 14 Ruling Case Law, Insurance, last sentence, par. 103, footnote 15; 16 Am. & Eng. Ency. of Law (2d Ed.) p. 862; Hearne v. Gillett, 62 Tex. 23; Kempner v. Advance Thresher Co., 44 Tex. Civ. App. 128, 97 S. W. 1080.

Under this view the remaining assignments raise immaterial issues.

It follows that all assignments should be overruled.

Affirmed.

### On Motion for Rehearing.

In the original opinion it was recited that the trial court, after fully reviewing the various policies and binders, had stated its fact finding to be that the parties intended their

contract of insurance to be one in accordance with the Texas Compensation Law, which finding this court, after a like review of the statement of facts, wherein all the policies and binders were set out in full, adopted as its own. Then followed an extended description and discussion of them in their proper sequence, with quotations of such provisions therefrom as were deemed adequate to an understanding of their import, and a closing reiteration that all their various stipulations had been considered together. We did not, however, copy in hæc verba all the different recitations therein which appellant contended constituted the full and final contract of insurance between it and the appellee. That was not then, nor is it now, thought essential, but, in deference to the very earnest request of counsel for appellant that it be done, the court has pleasure in making these additional findings of fact:

1. Policy EY–4480, of date October 20, 1913, contains these paragraphs:

"Par. 2. To pay the compensation and to furnish or cause to be furnished the medical and surgical treatment provided by the Workmen's Compensation Law or Laws designated in declaration 7 as they exist when this policy takes effect, excluding amendments thereto subsequently made;

"Par. 3. To indemnify the assured against loss by reason of the liability imposed by law for damages;

Par. 4. To investigate accidents involving such bodily injuries or death, to negotiate settlement of claims, and to defend suits for compensation or damages brought on account of such bodily injuries or death, in the name and on behalf of the assured, unless and until the corporation shall elect to effect settlement thereof; and

"Par. 5. To pay all costs taxed against the assured in any legal proceeding defended by the corporation in accordance with the preceding paragraph, all interest accruing upon the judgment rendered in connection therewith, and all expenses incurred by the corporation for investigation, negotiation, or defense."

2. In policy No. 501,507, of date April 25, 1913, occur these provisions:

"(1) To indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries (including death at any time resulting therefrom) accidentally suffered, or alleged to have been suffered, during the policy period defined in said statements, by any employé or employés of the assured while at the places designated in statement 4 by reason of work therein described;

"(2) To contest claims and to defend suits, even if groundless, made or brought against the assured on account of such bodily injuries or death, unless it shall elect to settle such claims or suits; and

"(3) To pay all costs taxed against the assured in any legal proceeding defended by the corporation according to agreement (2) above, and all interest accruing after entry of judgment upon such part of same as is not in excess of the corporation's limit of liability as hereinafter expressed."

"A. The corporation's liability on account of bodily injuries to, or the death of, one person, shall be limited to the sum of five thousand dollars ($5,000.00), and, subject to the same limit for each person, the corporation's total lia-

bility on account of bodily injuries to, or the death of, more than one person, as a result of one accident, shall be limited to the sum of ten thousand dollars ($10,000.00); but in addition to these limits the corporation will pay expense incurred by the corporation in the investigation of claims and in the defense of suits, and all sums for which the corporation may be liable under section (3) of the insuring agreements."

3. Workmen's Compensation Endorsement No. 141,233 embraces these recitations:

"(1) That in consideration of the payment of the premium rates specified in paragraph 7 of this indorsement in lieu of the premium rates for which pay roll expenditure is the basis for premium calculation expressed in the policy to which this indorsement is attached, and in further consideration of the warranty contained in paragraph 5 hereof, the said policy is hereby extended to include within its terms all obligations imposed upon or assumed by the assured under any of the provisions contained in the said act in so far as the same shall have reference to the subject-matter of this insurance.

"(2) That paragraph A of the conditions of the said policy is hereby eliminated."

"(4) That notwithstanding the said act or any part thereof is now or shall hereafter be declared invalid or unconstitutional, all premiums provided by this indorsement shall be fully earned by the corporation, and accordingly the schedule of workmen's compensation benefits contained in the said act (as distinguished from the additional liability imposed for the recovery of damages) shall be considered a part of said policy as fully and completely as if wholly written therein, and shall be and remain a part of said policy so long as the said policy shall remain in force; but permission is given to the assured to cancel this indorsement on a pro rata basis at any time after the said act has been declared invalid or unconstitutional by the judgment of any court of last resort, and the policy itself shall then remain in full force and effect as originally written."

In the motion for rehearing attention is also called to an inadvertent but wholly unimportant error in the statement of some figures in the former opinion, where it was said, "even though one hundred employés should sustain damages of $5,000 each, totaling $100,000," etc., when it should have read twenty employés instead of one hundred. In acknowledging the opportunity to make the correction, attention is arrested by the fact that the error in the figures actually used but emphasized and accentuated the point of the argument the court was making.

The motion for rehearing, after having been carefully read and considered, is overruled.

Overruled.