**TRINITY COUNTY LUMBER CO. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited. (No. 198–3258.)**

(Commission of Appeals of Texas, Section A. March 2, 1921.)

**1. Contracts ⊙147(2)—Intention sought by construction the expressed intention.**

Intention which is the object sought by construction of a contract, and which, when discovered, governs in determination of rights and obligations of the parties, is not a secret unexpressed intention, but the intention finding expression in the language used.

**2. Insurance ⊙435—Policy held to cover master's liability at common law as well as under Workmen's Compensation Act.**

Construed with a liability policy issued to an employer before enactment of Workmen's Compensation Law (Laws 1913, c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), and binders thereafter attached, a subsequent policy, in which were merged all previous obligations, and which was made retroactive, *held* to cover master's liability at common law as well as under the Compensation Act.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by the Trinity County Lumber Company against the Ocean Accident & Guarantee Corporation, Limited. Judgment for defendant was affirmed by the Court of Civil Appeals (206 S. W. 531), and plaintiff brings error. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston (C. L. Carter and W. A. Parish, both of Houston, of counsel), for plaintiff in error.

Earl Wharton and W. L. Cook, both of Houston, for defendant in error.

SONFIELD, P. J. Trinity County Lumber Company, plaintiff, hereinafter called "Lumber Company," brought this action against the Ocean Accident & Guarantee Corporation, Limited, defendant, hereinafter referred to as "Insurance Company," to recover on a contract of insurance. The trial to the court resulted in a judgment denying recovery to the Lumber Company and denying to the Insurance Company recovery on its cross-action, which judgment, on appeal by the Lum-

ber Company, was affirmed. 206 S. W. 531.

On September 11, 1913, Garrison, an employee of the Lumber Company, was injured while in the discharge of his duties. The injury was duly reported to the Insurance Company. Settlement was sought to be made with Garrison on the basis of the compensation allowed under the Workmen's Compensation Act (Laws 1913, c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]). Garrison declined to make such settlement, asserting that he had received no notice that the Lumber Company had become a subscriber under the Compensation Act, and was therefore not bound by its provisions. Both the Lumber Company and Insurance Company doubted the sufficiency of the evidence to show notice to Garrison. A settlement was finally agreed to involving the payment by the Insurance Company of the maximum amount provided by the Compensation Act in case of total permanent disability, being the sum of $3,600, and payment by the Lumber Company of the further sum of $7,400, Garrison executing a release to both companies. An agreement was had between the Lumber Company and Insurance Company to the effect that the amount paid Garrison in settlement of his claim should be considered as though he had recovered judgment for that amount in a suit against the Lumber Company; that, in the event an adjustment could not be had between the parties, the Lumber Company was given the right to file suit against the Insurance Company for the recovery of the amount advanced by it in the settlement, and neither the fact that a settlement had been made nor anything in the agreement should prejudice the Lumber Company's right to maintain such suit, or prejudice the Insurance Company's right to interpose any defenses that it may have thereto for breach of warranty and otherwise.

Failing to adjust the matter, the Lumber Company brought this action to recover the $7,400 paid by it, together with interest.

The Insurance Company answered with exceptions, denials, and pleas of limitation, and alleged a breach of warranty in the failure on the part of the Lumber Company to give the proper notices to its employees. By way of cross-action, it asserted its right to recover the amount paid by it to Garrison in the event it should be determined that no contract of insurance existed between plaintiff and defendant through the Insurance Company's delay in filing its manual of rates or through breach by the Lumber Company of its warranties.

Under date April 25, 1913, the Insurance Company issued to the Lumber Company an employers' liability policy to be in effect from May 1, 1913, to May 1, 1914, this policy being No. 501,507, and hereafter referred to

as the original. The insuring agreements in this policy are as follows:

"(1) To indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries (including death at any time resulting therefrom) accidentally suffered, or alleged to have been suffered, during the policy period defined in said statements, by any employé or employés of the assured, while at the places designated in statement 4, by reason of the work therein described;

"(2) To contest claims and to defend suits, even if groundless, made or brought against the assured on account of such bodily injuries or death, unless it shall elect to settle such claims or suits; and

"(3) To pay all costs taxed against the assured in any legal proceeding defended by the corporation according to agreement (2) above, and all interest accruing after entry of judgment upon such part of same as is not in excess of the corporation's limit of liability as hereinafter expressed."

The Insurance Company's liability on account of bodily injury to, or the death of, one person was limited under paragraph A of the policy to the sum of $5,000, and the total liability for injuries to, or death of, more than one person as a result of one accident was limited to the sum of $10,000. Liability under any Workmen's Compensation Act was expressly excluded.

The Workmen's Compensation Law enacted by the Thirty-Third Legislature became effective on September 1, 1913. The Lumber Company having notified the Insurance Company that it desired insurance under that act, the Insurance Company under date of August 31, 1913, issued to the Lumber Company a binder to the original policy, acknowledging itself bound by "a liability and workmen's compensation insurance undertaking, the subject-matter of the insurance being described in the following schedule; and during the term of this binder the actual contract of insurance shall be evidenced by such of the printed policy form blanks in use by the corporation during such term as are indicated by the letters given in the schedule." This binder was to continue in effect until September 10, 1913. At its expiration it was renewed by an exactly similar binder covering the period from September 10 to September 20, 1913, which included the date of the injury to Garrison.

Under date September 22, 1913, the Insurance Company issued a third binder which was attached to and became a part of the original policy. This binder by its terms covered the period from August 31, 1913, to May 1, 1914, which included the date of Garrison's injury. The binder contains the following provisions:

"(1) That in consideration of the payment of the premium rates specified in paragraph 7 of this indorsement in lieu of the premium rates for which pay roll expenditure is the basis for premium calculation expressed in the policy to which this indorsement is attached, and in further consideration of the warranty contained in paragraph 5 hereof, the said policy is hereby extended to include within its terms all obligations imposed upon or assumed by the assured under any of the provisions contained in the said act in so far as the same shall have reference to the subject matter of this insurance."

"(3) That paragraph A of the conditions of the said policy is hereby eliminated. * * *

"(4) That, notwithstanding the said act or any part thereof is now or shall hereafter be declared invalid or unconstitutional, all premiums provided by this indorsement. shall be fully earned by the corporation, and accordingly the schedule of Workmen's Compensation benefits contained in the said act (as distinguished from the additional liability imposed for the recovery of damages) shall be considered a part of said policy as fully and completely as if wholly written therein, and shall be and remain a part of said policy so long as the said policy shall remain in force, but permission is given to the assured to cancel this indorsement on a pro rata basis at any time after the said act has been declared invalid or unconstitutional by the judgment of any court of last resort, and the policy itself shall then remain in full force and effect as originally written.

"(5) That the assured hereby warrants that the assured has elected to accept and has accepted in the manner provided in the Workmen's Compensation Act hereinafter in this paragraph designated the schedule of workmen's compensation benefits therein contained, and the assured further warrants that, this acceptance will not be revoked during the period that this indorsement is in effect. Chapter 179, Laws of 1913 State of Texas, commonly known as the Texas Workmen's Law."

The Insurance Company on October 20, 1913, after it had notice of Garrison's injury, issued and delivered to the Lumber Company the final form of policy, being known as E. Y. 4480. This policy by its terms was made retroactive so as to be effective from and after September 1, 1913, and to cover the period from that date to September 1, 1914. This policy was known as "Workmen's Compensation Policy—Unlimited Manufacturer's Form." The insuring agreements of the policy are as follows:

"Par. 2. To pay the compensation and to furnish or cause to be furnished the medical and surgical treatment provided by the Workmen's Compensation Law or laws designated in declaration 7 as they exist when this policy takes effect, excluding amendments thereto subsequently made;

"Par. 3. To indemnify the assured against loss by reason of the liability imposed by law for damages;

"Par. 4. To investigate accidents involving such bodily injuries or death, to negotiate settlement of claims, and to defend suits for compensation or damages brought on account of such bodily injuries or death in the name and on behalf of the assured, unless and until the corporation shall elect to effect settlement thereof; and.

"Par. 5. To pay all costs taxed against the assured in any legal proceeding defended by the corporation in accordance with the preceding paragraph, all interest accruing upon the judgment rendered in connection therewith, and all expenses incurred by the corporation for investigation, negotiation, or defense."

The foregoing agreements in the policy were made subject to certain conditions, among others the following:

"(D) No action in respect of loss resulting from liability for damages under paragraph 3 of the insuring agreements shall lie against the corporation unless it shall be brought by the assured for reimbursement of the amount of loss actually sustained and paid in money by the assured in full satisfaction of a judgment duly recovered against the assured after final determination of the litigation. In no event shall any such action lie unless brought within a period of two years after right of action accrues."

The trial court filed the following conclusions of law:

"(1) That the policy, EC–501,507, the various binders referred to, and policy E. Y. 4480 witness the existence of a policy on September 11, 1913, of insurance under the Texas Workmen's Compensation Act, and not, in addition thereto, a general indemnity against liability to employees not arising under said act.
"(2) That defendant is liable to plaintiff for the amount to which its injured employee was entitled under said act."

The trial court found against the Insurance Company upon its cross-action involving a breach of warranty by the Lumber Company in failing to give the proper notices to its employees, and held it liable upon the policy. The Insurance Company not having excepted to such holding, nor appealed therefrom, that question is eliminated from the case, leaving but one question for determination: Was the contract of insurance in force at the date of Garrison's injury limited to indemnity under the Workmen's Compensation Act, or was it also a general indemnity against liability to employees of the Lumber Company for any damages imposed by law?

To determine the question at issue, it is necessary to construe the original policy in connection with the various binders and the new policy.

[1] The object of the construction of a contract is to ascertain the manner and extent to which the parties intended to bind themselves. When that intention is discovered, it will govern in the determination of the rights and obligations of the various parties. The intention sought is not the secret unexpressed intention of one or of all the parties, but the intention which finds expression in the language used. Heirs of Watrous v. McKie, 54 Tex. 65. It may be that the parol evidence adduced on the trial by the Insurance Company established that it

was its intention and purpose to substitute for the contract of general indemnity insurance one limited to indemnity under the Workmen's Compensation Act. This would not, however in any wise affect the rights of the Lumber Company, if the language used by the parties expressed a different intention.

Whatever the secret or unexpressed intention of one or both of the parties may have been, we are persuaded that the expressed intention was not a limitation of the contract to indemnity under the act, but an extension, whereby such compensation was included, leaving in full force and effect the obligation of general indemnity.

[2] There is no controversy as to the character of the insurance undertaking under the original policy. It was a contract of general indemnity for liability to the employees of the Lumber Company for damages imposed by law, with a restriction as to the amount payable.

When the Texas Workmen's Compensation Act became effective, a binder was attached to the original policy wherein the Insurance Company "acknowledges itself bound by a liability and workmen's compensation insurance undertaking."

It cannot be again said that this binder combines two separate and distinct insurance undertakings. The original policy was exclusively a liability undertaking, expressly stipulating against insurance under the Compensation Act of any state. The binder but abrogated this stipulation to the extent of the assumption of liability under the Texas Compensation Act and recognized and reaffirmed its liability insurance undertaking under the original policy. "Acknowledges itself bound by a liability and workmen's compensation insurance undertaking" can hardly be construed to mean "acknowledges itself bound by a workmen's compensation insurances undertaking in lieu of and as a substitute for its liability insurance undertaking."

The expressed intention in the first binder (the second being identical in terms with the first) is emphasized by the language of the third binder. The third binder provides with reference to the original policy:

"The said policy is hereby extended to include within its terms all obligations imposed upon or assumed by the assured under the Texas Workmen's Compensation Act."

To "extend" is to enlarge, to broaden, to make more comprehensive. It does not import an elmination of that which exists, or a limitation thereof, but rather the inclusion of something further. A contract "extended to include" does not signify substitution for, but addition to. The original policy, a general liability contract, expressly excluding indemnity under any Workmen's Compensation Act, was, through this binder, extended,

made more comprehensive, including therewith further liability under the Compensation Act.

The extension of the policy is provided for in paragraph 1 of the third binder. The second paragraph of this binder provides: "Paragraph A of the condition of said policy is hereby eliminated." Paragraph A of the original contract referred to is a restriction on the amount to be paid. In view of this clearly expressed paragraph of exclusion—itself extending liability—we do not feel warranted in construing the expression "extended to include" in such manner as to result in restriction through exclusion.

If any doubt exists as to the expressed intention of the parties in the contract as modified or changed by the binders, such doubt is dissipated by the new policy issued by the Insurance Company in which was merged all the previous obligations and which by its terms is made retroactive covering the period of Garrison's injury.

The insurance undertakings in the new policy are clearly expressed in paragraphs 2 and 3. Through paragraph 2 the Insurance Company binds itself to "pay the compensation * * * provided by the Workmen's Compensation Law. * * *" In paragraph 3 it agrees "to indemnify the assured against loss by reason of the liability imposed by law for damages."

The two paragraphs deal with separate and distinct undertakings. Paragraph 2 is sufficiently broad and comprehensive to cover liability for the compensation provided in the act. It is complete within itself. Paragraph 3 indemnifies, not against compensation, but against damages imposed by law, and is without qualification or limitation. It is substantially identical with the language used in the original policy. The original policy deals alone with general indemnity liability. Its language is:

"To indemnify the assured against loss from the liability imposed by law upon the assured for damages. * * *"

Striking out of the new policy paragraph 2, indemnifying against compensation under the act, and leaving the undertaking as expressed only in paragraph 3, the liability under each policy would be precisely the same except as to the restriction upon the amount payable contained in the original policy, which was eliminated by the third binder and excluded from the new policy.

So, too, paragraphs 2 and 3 of the original policy impose the same, obligations with reference to the investigation of accidents, settlement of claims, defense of actions, and payment of costs in legal proceedings as are imposed under paragraphs 4 and 5 of the new policy, except that in the new policy the obligation includes cases of compensation as well as damages, and the restriction as to the amount payable is eliminated.

The Court of Civil Appeals recognized a twofold undertaking, compensation and damages, but held the policy in its entirety limited to the Compensation Act and paragraph 3 an obligation to indemnify against exemplary damages; this being the only character of damages imposed by the act. We cannot assent to such construction.

Section 5 of part 1 of the act (section 5246j) provides:

"Nothing in this act shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife and heirs * * * of any deceased employee, whose death is occasioned by homicide, through the willful act or omission or gross negligence of any person, firm or corporation, the employer of such employee at the time of the injury causing the death of the latter, * * * and on the issue for exemplary damages he shall have the same defenses as under the existing law."

It is thus apparent that the Workmen's Compensation Act does not impose liability for exemplary damages. It does not alter in this respect the liability of the employer prior to the passage of the act. It neither adds to nor takes from such liability, but leaves the law with reference thereto as it stood before the passage of the act and subject to the same defenses.

Nor does the Compensation Act impose liability for damages of any character. The employer's liability for negligence existed prior to the passage of this act. An employer failing to become a subscriber, or, becoming a subscriber, failing to give notice thereof to his employees, is not subjected to a new liability for injuries to or the death of an employee, but in actions therefor he is not permitted to interpose the common-law defenses. No new liability is imposed, but theretofore existing defenses are denied. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556.

No damages of any character being imposed by the Compensation Act, paragraph 3 would be meaningless if considered as limited to that act. We do not feel warranted in giving it a meaning other than that given substantially the same language used in the original policy, which concededly involved indemnity against the common-law and statutory liability of the employer for injury to or the death of his employees in the course of their employment.

Under the original policy, the Insurance Company assumed certain obligations. The language of that policy, of the various binders, and of the new policy is that of the Insurance Company. If subsequent to the original policy it was the intention of the Insurance Company to relieve itself from liability other than that imposed upon or assumed

by the Lumber Company under the Compensation Act, such intention should have been clearly and unequivocally expressed.

A contract for insurance covering both general indemnity and compensation under the act was one which the parties were entirely competent to make, and, such being the expressed intention gathered from the language employed, the parties will be held bound accordingly.

In view of the agreement between the parties, the money paid to Garrison by the Lumber Company in the settlement must be considered a payment in full satisfaction of judgment recovered by Garrison against the Lumber Company. We think such payment within the purview of paragraph D of the new policy, imposing upon the Insurance Company the obligation of reimbursement. We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and judgment here rendered that plaintiff in error recover of and from defendant in error the sum of $7,400, with interest from the 9th day of March, 1914.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.