WILSON v. SEIGEL.     (No. 632.)†

(Court of Civil Appeals of Texas. Amarillo. June 6, 1914.)

1. ADVERSE POSSESSION (§ 41*)—TIME REQUIRED FOR ACQUISITION OF TITLE.

Defendant in trespass to try title, who purchased the land involved in February, 1903, recorded his deed in March of the same year, and to whom in February, 1905, plaintiff, under a mistake as to his own boundaries, attorned and paid rent to November, 1910, and who paid all taxes on the land from 1903 to 1912, inclusive,

was entitled to the land under the five-year statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 184–206; Dec. Dig. § 41.*]

2. ADVERSE POSSESSION (§ 31*)—NOTICE OF CLAIM—PRESUMPTION.

An owner of premises is presumed to know the true location of his boundaries, and is bound to take notice of the nature and extent of possession by a claimant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133; Dec. Dig. § 31.*]

Appeal from District Court, Archer County; P. A. Martin, Judge.

Trespass to try title by L. F. Wilson against Phillip Seigel, Sr. Judgment for defendant, and plaintiff appeals. Affirmed.

A. H. Carrigan, of Wichita Falls, for appellant. W. E. Forgy, of Archer City, for appellee.

HALL, J. Appellant, Wilson, instituted this suit against appellee February 14, 1912, in the district court of Archer county, in the ordinary form of trespass to try title, to recover 30.45 acres of land, being a part of the Geo. S. Kinsman survey, and known as part of lot No. 4, in block 22, according to the American Tribune New Colony Company's map and subdivision.

The appellee answered: (1) By plea of not guilty; (2) statute of three years' limitation; (3) statute of five years' limitation; and (4) statute of ten years' limitation.

[1] Upon a trial before the court without a jury, judgment for appellee Seigel resulted; the court holding that appellee was entitled to the land in controversy by virtue of his plea of limitation of five years. We think this holding is correct. The appellee established without controversy that he purchased the land involved from the American Tribune New Colony Company in February, 1903, and in March of the same year his deed was duly recorded; that in February, 1905, appellee leased the land in controversy to the appellant, and that appellant attorned to and paid rents to appellee to November, 1910; that appellee had paid all taxes against said land from 1903 to 1912, inclusive. It appears that the land in controversy had been conveyed by appellant to the American Tribune New Colony Company, together with other lands, and in such conveyance a vendor's lien had been retained to secure the payment of $38,000, evidenced by a promissory note; that, after the conveyance to the American Tribune New Colony Company, it plotted the lands purchased from appellant, subdividing it into lots and blocks, and that lot No. 4, in block No. 22, according to its plot and subdivision, included that portion of the Kinsman survey described in plaintiff's petition; that in February, 1906, plaintiff obtained a judgment in the district court of Tarrant county against the American Trib-

---

une New Colony Company, foreclosing his vendor's lien on the southwest quarter of the Kinsman survey and other lands, for the payment of the $38,000 note, and purchased this, with other property, at foreclosure sale made under said judgment, and received a sheriff's deed therefor on June 5, 1906. The appellant testified:

"I did not know where the dividing line between the Geo. S. Kinsman survey on the west and the Edward Hall survey on the east was situated until 1911. I supposed that lot No. 4, in block No. 22, was situated west of the Geo. S. Kinsman southwest quarter. In February, 1905, I did lease from the defendant lots 2, 3, and 4, in block 22, of the American Tribune New Colony Company's lands, but did not know that this lot No. 4, in block 22, embraced any portion of the southwest quarter of the Geo. S. Kinsman survey of land. * * * I was simply mistaken as to where lot No. 4, in block No. 22, of the American Tribune New Colony Company lands were situated, and I did not intend to hold any portion of the Kinsman survey as a tenant for the defendant in this case and did not know that I was paying rent to the defendant in this suit on the southwest quarter of the Kinsman survey."

Appellee was not made a party to the foreclosure proceeding in Tarrant county, and so far as this record shows, being a nonresident of the state, had no actual notice of the foreclosure. In purchasing the premises in controversy from the American Tribune New Colony Company, he did not assume any part of the $38,000 debt due appellant.

[2] In Brownson v. Scanlan, 59 Tex. 222, Willie, C. J., said:

"The party holding the superior title would not be excused for ignorance of the particular claim of right under which the premises were held by those in possession. He is not in the condition of an ordinary and casual observer but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning, and locality of any settlement made within them without his authority."

In Sanders v. Moore, 157 S. W. 441, it is held that the owner of premises is presumed to know the true location of his boundaries and is bound to take notice of the nature and extent of possession by a claimant.

The appellant's assignments are overruled, and the judgment of the trial court is affirmed.