**SLAVENS v. JAMES et al.** (No. 226–3396.)

(Commission of Appeals of Texas, Section A. April 6, 1921.)

**1. Sales ⚖️196—Seller's propositions to make buyer's performance possible when accepted constituted a waiver of any previous breach by buyer.**

Where seller of cattle, on buyer's inability to pay purchase price, offered to feed cattle until the following spring and carry buyer for specified amount until such time, at which time buyer could take the cattle and pay note and specified amount for pasturage, or could keep cattle and pay amount borrowed by seller on buyer's note to bank indorsed by seller, the acceptance of either of such propositions would have constituted a waiver by seller of any previous breach of the contract on the part of buyer.

**2. Contracts ⚖️147(2) — Intention of parties ascertained from language used.**

The intention of the parties is to be ascertained as expressed by the language used, but not the intention which may have existed in the minds of the parties, but not expressed by their language.

**3. Sales ⚖️196 — Seller's offer to postpone performance by buyer accepted by buyer constituted waiver by seller of buyer's previous breach.**

Where offer by seller of cattle to keep cattle until the following spring on a declining market was ambiguously expressed, and buyer accepted the offer after the actual construction placed thereon by seller was communicated to him, there was a waiver by seller of the previous breach of the contract by buyer.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by A. M. James and another against O. R. Slavens. Judgment for plaintiffs affirmed by the Court of Civil Appeals (211 S. W. 842), and defendant brings error. Judgments of Court of Civil Appeals and district court reversed, and judgment rendered for defendant.

F. L. Martin, of Hutchinson, Kan., and R. E. Stalcup, of Dalhart, for plaintiff in error.

Tatum & Strong, of Dalhart, for defendants in error.

SPENCER, J. On the 10th day of August, 1911, plaintiff in error, O. R. Slavens, entered into a contract with defendants in error. James Bros., a copartnership composed of A. M. James and W. P. James, by the terms of which James Bros. sold to Slavens 1,300 to 1,500 head of four year old steers at $49 per head, with the right to "cut back" 10 per cent. of the number and pay for them at the rate of $47.50 per head, to be delivered on cars at Dalhart on November 1, 1911, and 1,700 to 1,800 head of three year old steers

at $42 per head, with the option to take a part or all of them in the fall of 1911 at $42 per head, or in the following spring at $45 per head, with the right to select and refuse 10 per cent. of the number at the time of delivery. The contract provided that Slavens should put in a bank to be agreed upon by the parties the sum of $5,000 as a forfeit, $2,500 for the four year old and $2,500 for the three year old steers.

By subsequent agreement, and in discharge of the $5,000 obligation mentioned in the contract, Slavens executed and delivered his note to James Bros. for $3,500 and his note to the Dalhart National Bank for $1,500, which latter note was indorsed by James Bros., who received the money borrowed upon the faith of it.

Upon Slavens informing James Bros. of his inability to secure the money by November 1 to pay for the four year old steers, it was agreed that he would take and pay for the three year old steers on or before November 1, instead of exercising his option of taking them in the spring, and that James Bros. would suffer the loss sustained by reason of the sale of the four year old steers upon a declining market.

Slavens did not go in person to receive the cattle, but arranged with one Fremont Rogers, a representative of the Interstate National Bank, from which Slavens had arranged to secure the money to pay for the steers, to go to Dalhart to receive and pay for them.

Rogers arrived at Dalhart on November 2, and, after an inspection of the cattle on November 3, informed James Bros. that he would not advance the full purchase price agreed to be paid for the steers, but would advance the purchase price less $5,000. Whereupon A. M. James wrote and Rogers signed and sent the following telegram:

"Dalhart, Texas, November 3, 1911. O. R. Slavens, Hutchison, Kan. Theis did not buy steers. James proposes to brand cattle and leave them on ranch and carry you for $5,000 till spring. You to take cattle then and pay him note and $2 per head pasture, or he will keep cattle and pay amount borrowed. Think this best proposition under circumstances. Answer quick. Fremont Rogers."

To this telegram Slavens answered:

"Fremont Rogers, Dalhart, Texas. Better for him to keep cattle. Him pay amount borrowed. Impossible for me to do anything. Still confined to house. O. R. Slavens."

Rogers replied to this telegram as follows:

"Don't fully understand your message. Do you want to accept James' proposition as wired last night? I can stay here and cut cattle if needed. Answer at Texhoma."

To this Slavens replied as follows:

"I don't want James' cattle under any circumstances."

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Upon receipt of the last-mentioned telegram, James Bros. treated the contract as at an end and made other arrangements as to the disposition of the cattle.

On or about November 6, 1911, Slavens received from Rogers a letter which reads in part as follows:

"His proposition was to give you six months' time on this note, charge you $2 per head for wintering the cattle, and if you were not at that time in a position to take up your note of $5,-000 and pay the pasture bill, Andy (James) agreed to take up the paper held by the bank. This would give you all the chances to win and nothing to lose. As it stands now he holds your note for $5,000 and by your turning this proposition down he is going to collect it if possible. But on his proposition he was giving you six months to handle the deal in, taking off $1 per head of the pasture price and giving you all of the profits, provided you should succeed in selling."

Upon receipt of this letter Slavens wired Rogers as follows:

"Close deal with James Bros. according to your letter from Texhoma of November 4. Send contract and note to be signed."

He also wired James Bros. as follows:

"Wired Rogers Texhoma close deal with you according to his letter of November 4."

The $1,500 note remained in the bank unpaid; James Bros. paying the interest thereon. Eventually James Bros. came into possession of and instituted this suit to collect the note, alleging that the bank had for a valuable consideration transferred and delivered the same to them.

Slavens defended upon the ground that the contract was, as disclosed by the correspondence copied above, completely rescinded by mutual agreement of the parties, and that therefore the consideration for the note had failed.

The trial, which was before the court without a jury, resulted in a judgment in favor of James Bros. for the amount of the note. Upon appeal the judgment was affirmed. 211 S. W. 842.

[1] The telegram of November 3, written by James Bros., embodies upon its face two separate and distinct propositions, the acceptance of either of which would clearly amount to a waiver by James Bros. of any previous breach of the contract upon Slavens' part.

[2] It subsequently developed that the intention did not exist in the mind of A. M. James representing James Bros. in writing the telegram which Rogers signed, to keep the cattle and pay the amount borrowed at the bank upon the note signed by Slavens and indorsed by James Bros. But clearly this was the plain import of the language employed and upon which Slavens, in good faith, acted in accepting the proposition which it plainly conveyed. The intention is to be ascertained as expressed by the language used, and not the intention which may have existed in the minds of James Bros., but is not expressed by their language. It is the meaning upon the face of the instrument which courts must declare was the intention of the parties at the time the telegram was sent. The parties knew that the only money borrowed in connection with the contract was the $1,500. It does not, upon its face, purport to deal with money to be borrowed, but only deals with the money which had been borrowed.

[3] If, however, there was any ambiguity in the telegram it was the fault of James Bros. because they wrote the telegram, and it was incumbent upon them to communicate their construction and intention to Slavens before he could be regarded as in default. Slavens accepted the offer under the actual construction placed upon the telegram by James Bros. as soon as that construction was communicated to him. James Bros. having then refused to perform their obligation, we do not think Slavens can be held to have breached the agreement.

We recommend, therefore, that the judgments of the Court of Civil Appeals and of the district court in favor of defendant in error be reversed and rendered in favor of plaintiff in error.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.