### STEWART et al. v. McKEE et al.

### No. 2079.

Court of Civil Appeals of Texas. Eastland.

Jan. 24, 1941.

Rehearing Denied May 2, 1941.

Second Motion for Rehearing Denied May 16, 1941.

Ramey, Calhoun & Marsh, of Tyler, and Lee, Porter & Latham, of Longview, for appellants.

Slay & Simon, of Fort Worth, E. E. Fischer, of Houston, and John H. Thomas, of Dallas, for appellees.

FUNDERBURK, Justice.

This is a suit in trespass to try title and for damages to a 4.4-acre tract of land in Smith County. The 4.4 acres of land was described by metes and bounds as beginning at a stake in an old fence line 1,328 feet along such old fence line, and in a course south 10° 35' W, from the NW corner of the Wyley 320-acre Survey and the NE corner of the Louis Roberson 35-acre tract. From this beginning point the calls were:

"Thence N. 80 W 79 feet to stake for corner;

"Thence S. 11° 45' W crossing Wilshire Creek and continuing 1320 feet to stake for corner on the old NL of the McNary Smith tract of the McDavid property, said corner being in the old hedge lines and the old fence lines;

"Thence S. 80 E with the McDavid old fence line crossing Wilshire Creek continuing 54 feet to stake for corner on the East line of the Mayfield Estate property, said point being in the old fence line that now stands;

"Thence in a northerly direction following in a general manner but not the meanders along the E bank of Wilshire Creek as an old fence line now stands between Bateman's property and Mayfield Estate property, by survey on the ground as follows: N 12 34' E 174 ft; N 62 11' E 91 ft; N 31 16' E 261 ft; N 10 15' E 181 ft; N 1 22' E 292 ft; N 23 08' W 92 ft; N 2 31' W 143 ft; N 6 15' E 201 ft. to the place of beginning."

The plaintiffs were E. R. Stewart, A. S. Genecov and Sam Roosth. The defendants were Jesse McKee, Ed Taubert, C. L. Mahaney, and nineteen others, including the heirs of Parmelia Turner, deceased.

In addition to a general averment of ownership of the land and of particular interests therein, plaintiffs specially pleaded title by ten years limitation.

One of the defendants was DeSoto Crude Oil Purchasing Corporation, which, by its pleadings, showed that from a well drilled by defendants Taubert & McKee and Mahaney upon the said land, it had purchased all the oil produced therefrom. It stated the amount of the total production, amounts paid, and to whom, and the amounts not paid but held in suspense.

The answer of defendants Libby Singer and husband, M. Singer, disclosed that they claimed to be the owners of an oil and gas lease upon the strip of land, subject to outstanding interests in other defendants, from which lease the oil had been produced. In addition to a general denial, and plea of not guilty, they pleaded improvements in good faith, and sought allowance therefor.

In a non-jury trial the court gave judgment for the defendants, from which the plaintiffs have appealed.

Appellants' Fifth Proposition is as follows: "The record affirmatively shows that the W 79 feet of the strip claimed by the defendants, and for which plaintiffs sued were included in, and a part of, the 73 acre tract conveyed by Parmelia Turner and husband to Ben Roberson. Plaintiff showed a consecutive record chain of title to this strip out of Parmelia Turner 52 years before Mahaney bought the south one acre of the tract from the Turner heirs and 54 years before Taubert & McKee took an oil and gas lease out of the Turner heirs covering the remainder. The trial court therefore erred in not awarding plaintiffs title to this 79 foot strip."

It was shown conclusively by the evidence that the NW corner of the Wyley (sometimes referred to as the Tucker) 320-acre tract, and the NE corner of the Louis Roberson 35-acre tract were the same, being a point on the N boundary line of the James Jordan League Survey. There was no controversy as to the location of this corner upon the ground. The further fact was uncontroverted that the NE corner of the Ben Roberson 37-acre tract and the SE corner of the Louis Roberson 35-acre tract were the same. This corner, according to the undisputed evidence, existed on the ground at a point 1,328 feet along an old fence line running in the course of S 10° 35' W from the said NW corner of the Wyley 320-acre tract, and the co-incident NE corner of the Louis Roberson 35-acre tract. The East boundary line of the Ben Roberson 35-acre tract, according to the record title to said tract, was a line beginning at said undisputed corner (i.e., NE corner of the Ben Roberson 37-acre tract, and co-incident SE corner of the Louis Roberson 35-acre tract),

which corner was also in the West boundary line of the said Wyley, or Tucker, 320-acre tract, and running "Thence *South* 80 rods to a corner." Therefore, it appears any line beginning at said corner, whether running "N 80° W 79 ft" and Thence "S 11° 45′ W crossing Wilshire Creek and continuing 1320 feet to a stake for corner", as called for in the description of the strip of land in suit, or whether running directly from said corner in a course "S 11° 45′ W", or "10° 35′ W", would immediately run into said Ben Roberson's 37 acre tract, and through land, the record title to which was in the assignees of Ben Roberson.

That some of the defendants were claiming the land described in plaintiffs' pleadings was shown by the fact that the lease claimed by the defendants Taubert & McKee described the land in precisely the same way as described in plaintiffs' petition. The defendants' pleas of not guilty constituted an admission that the defendants were in possession of said strip of land. R.S.1925, Art. 7374. J. C. Bateman (joined by his wife), a remote grantee of Ben Roberson as to the entire 37-acre tract, on February 3, 1931, executed an oil and gas lease upon said land to Sun Oil Company. (H. A. Pace, another remote grantee of Ben Roberson, and the grantor of Bateman, joined in said lease.) Said lease, after describing the land the same as it had been described throughout the chain of title from Ben Roberson, except by adding "more or less" to the statement that the tract contained 37 acres, further recited that it was the "intention, however, of lessor to include within the terms of this lease not only the above described land, but also any and all other land owned or claimed by lessor in said Survey or Surveys in which the above described land is situated or in adjoining surveys and adjoining the above described land."

This lease covered the Ben Roberson 37-acre tract and the Louis Roberson 35-acre tract.

By separate instruments, Sun Oil Company assigned said lease, except as to 15 acres out of the West side of the 37-acre tract, to James Stewart and plaintiffs Genecov and Roosth. The portion of said lease, of which E. R. Stewart became the assignee, included all of the Ben Roberson 37-acre tract, except the west 15 acres, and the East line of the Stewart lease was a north-south line. It was, therefore, shown by the undisputed evidence that, of the tract of land described in plaintiffs' petition, 79 feet off the West side (slightly northwest side) was included in the E. R. Stewart lease which the judgment awarded to the defendants. It is true, perhaps, that particular portions of the evidence may be pointed out, in conflict with this conclusion, but the material portions of such evidence was not possibly true. We know that a line run from a given point thence south 11° 45′ W will never meet a line run upon the same course from a point north 80 west 79 feet from such point.

The evidence shows that Taubert & McKee, claiming a lease upon the 4.4-acre tract in controversy, less one acre which Mahaney claimed in fee, made a pooling agreement with Mahaney and had a well location made upon the land. The engineer who made the location was furnished with field notes, describing the land the same as described in plaintiffs' petition, and the same as described in Taubert & McKee's lease. The engineer's instructions were to survey the land according to the field notes furnished him. His testimony as presented in the statement of facts is very difficult to understand; but we think, upon the whole, it shows that he went around the lines as called for in the field notes and located the well at a point midway between the East and West lines, being 72 feet from each line. Later he made a plat of the land and undertook to amend the field notes by cutting out the following calls from said northeast corner of the Ben Roberson 37-acre tract and co-incident SE corner of the Louis Roberson 35-acre tract, namely, "Thence N 80 W 79 feet to stake for corner; thence S 11° 45′ W crossing Wilshire Creek and continuing 1,320 feet to stake for corner on the old NL of the McNary Smith tract of the McDavid property" and by substituting therefor a line run directly from said first mentioned corner upon a course of "S 10° 35′ W." The witness seems to say, in effect, that there was no difference between running the lines as called for in the field notes and running it as last described. That testimony, we think, must be rejected as mathematically untrue.

We think the evidence justifies the conclusion that instead of the well being located 72 feet East of the West line of the tract of land in suit, it was probably located West of such line, if such West line be located as beginning at said established NE

corner of the 37-acre tract and ran thence S 11° W 45'.

We are unable to reform the judgment by excluding said West 79 feet, since in doing so, if the remaining land should not include the well, the questions of improvements in good faith, and damages, could not be determined by this court.

We have failed to find any explanation in the record of why the true East boundary line of the Ben Roberson 37-acre tract described by course and distance—the course being south and the distance 80 rods—should be attempted to be located as a line from the undisputed corner running thence south 11° 45' W, or 10° 35' W. Such variation from the North-South East boundary line of the Ben Roberson 37-acre tract, in relation to the undisputed NE corner of same, would, according to our estimation, amount to about 123 feet when extended down to the well, about 596 feet from said corner. It seems to us it would be no more unreasonable to locate the East boundary line of the Roberson 37-acre tract along the meanderings of the Wilshire Creek, than it would to locate it off the true North-South course, as called for by a line varying 11° 45', or 10° 35'.

Our conclusions upon this point may, or may not, render immaterial the questions presented regarding limitation title.

It is our conclusion that the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

### On Rehearing

We are of the opinion that the record in this case is subject to the interpretation given it in our original opinion; yet, because of defects in the record rendering it ambiguous; and because of the admission of counsel for appellants, both in oral and written arguments, that the oil well on the 4.4-acre tract of land in controversy is located outside the boundaries of the Ben Roberson 37-acre tract, as described in the deed from Parmelia Turner to him, we have decided to accept that as an agreed, and therefore undisputed, fact and to express our opinion on the questions of limitation and other questions not discussed in the original opinion.

■ We adhere to the finding in the original opinion to the effect that it was an undisputed fact that the southeast corner of the Louis Roberson 35-acre tract was coincident with the northeast corner of the Ben Roberson 37-acre tract; that the location of said coincident corners, on the ground, was undisputed; and that the 4.4-acre tract in controversy, as awarded by the judgment to the defendants, included a strip 79 feet wide off the west (slightly northwest) side which was part of the Ben Roberson 37 acres according to the record title thereto. In all events, therefore, the judgment was erroneous in not awarding such part of the land to the plaintiffs.

Before proceeding to a discussion of the question of limitation, we deem it advisable to notice a contention of the appellants to the general effect that since the call for the East line of the Ben Roberson 37-acre tract running from the undisputed northeast corner, as above stated, was "Thence south 80 rods to corner", and since Wilshire Creek, the East boundary of Parmelia Turner's land, ran in a general southerly course from the same corner with the effect that the east line of the tract as called for in the deed crossed the creek several times, excluding two small tracts owned by the grantor, and including two small tracts not owned by her, that the deed should be construed as conveying all the land owned by the grantor, and therefore including the small tract in controversy.

■ The rule or principle of law invoked is that, a recent statement of which is to be found in Cantley v. Gulf Prod. Co., 135 Tex. 339, 143 S.W.2d 912, 915, as follows: "Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip." But such rule, or principle, can only be applicable where there exists an ambiguity in the description of the land conveyed. This must necessarily be true because of the operation of another well known principle; which is, that it is immaterial what was the real intention of the parties if such real intention be not expressed by the deed. If the parties had a particular intention, but by the provisions of the deed expressed another or different intention the only remedy, if any, would be the avoidance

or reformation of the deed. The only materiality of the real intention would be as evidence, in case of ambiguity, to show the intention ambiguously expressed. As said in Bumpass v. Bond, 131 Tex. 266, 272, 114 S.W.2d 1172, 1175: "Unless the intention is in doubt, on account of the ambiguity of the language used, courts, in the absence of the determination of the issue of fraud, accident, or mistake, have neither the right nor the authority to undertake to make a deed for parties, or to thwart the intention of parties *expressed in a deed and other instruments relating to a transaction.*" (Italics ours) "The object of construing any deed is to ascertain the intention of the parties as *expressed in the deed itself* and such intention expressed therein is of *controlling importance.*" (Italics ours) Totton v. Smith, 131 Tex. 219, 222, 113 S.W.2d 517, 518. The rule was clearly stated in Davis v. George, 104 Tex. 106, 134 S.W. 326, 328. After saying that "Both on its face and in its application to the ground, the description is clear and unambiguous and identifies as the land conveyed the 10 acres in dispute" the court further said: "It is too well settled to admit of doubt that such a deed cannot be collaterally attacked by the parties to it or their privies, by *evidence tending to show an intention different from that which its language unmistakably expresses.*" (Italics ours) Judge Combs aptly phrased a statement of the rule thus: "In ascertaining the intent of the grantor of a deed, it is not the function of the court to attempt to ascertain and declare what he meant to say, but only the meaning of what he did say." Holloway's Unknown Heirs v. Whatley, Tex.Civ.App., 104 S.W.2d 646, 650. See also Reynolds v. McMan Oil Co., Tex.Com.App., 11 S.W.2d 778, 781; Heirs of Nat Watrous v. McKie, 54 Tex. 65, 71 (Holding: "The duty of the courts in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words they have used"); Trinity County Lumber Co. v. Ocean Acc., etc., Corp., Tex.Com.App., 228 S.W. 114; Slavens v. James, Tex.Com.App., 229 S.W. 317; Southern Travelers' Ass'n v. Wright, Tex. Com.App., 34 S.W.2d 823, 826.

It cannot be seriously contended, we think, that the intention expressed in the deed to the effect that the East boundary line of the land conveyed runs from a certain point "Thence south 80 rods to a corner" is the same as an intention that said line from the same corner runs most of the way with the meanders of a creek to corner.

Material to the questions involving limitation are certain findings (conclusions of fact) of the Honorable Trial Judge. In our opinion, no effect can be given to the finding that "This deed calls for exactly 37 acres. That is, it does not call for 'more or less'; and *the calls calculate exactly 37 acres, indicating that the transaction must have been understood as a sale of exactly 37 acres.*" (Italics ours) The call for the South line was "Thence west 74 rods with the north boundary of Alfred Bells land and *meanders of the same* to the place of beginning." (Italics ours) A tract of land 80 by 74 rods with the 74 rods being a meandering line cannot, we think, be said to be exactly 37 acres, or to show certainly, as a matter of law, the intention to convey exactly 37 acres.

Pertinent and material to the questions to be determined are the following findings:

"It is apparent from all of the facts and circumstances that Ben Roberson attached his fences from his northeast corner and southeast corner to Wyley's fence for his convenience in enclosing his lands and not to claim title to the land to this Wyley fence * * * Ben Roberson used this fence in different ways to enclose his land during all of the time he lived on the 37 acres * * *.

"It is apparent from all of the evidence that Ben Roberson while he lived on this 37 acres [found to be from about October 6, 1883 to 1905] having no fence on his east line but using the fence on the Wyley land across the creek from a part of his 37 acres, at times probably cultivated across his line at places onto portions of this 4.4 acres of land; but the greater weight of the credible testimony fails to show that *he ever intended at any time to claim it* or that he actually held and *claimed adverse possession* of this 4.4 acres, or any part of it; but on the other hand, it was merely within the enclosure with his 37 acres by reason only of his having extended his fences to attach them to the Wyley fence for his convenience." (Italics ours)

The precise question presented for decision, we are unable to find, has ever been decided in this or any other jurisdiction. So much, however, has been written upon the subject of adverse possession that we would not hazard the assertion as a matter of fact or opinion, even after the diligent search we have made, that the question has not at sometime been decided.

Had Ben Roberson moved upon the 37 acres of land without any deed or other evidence of title, and had used all the land within the fences precisely as he did, and had cultivated, used and enjoyed the enclosed land just as the undisputed evidence, showed was done, such evidence would have established conclusively, we think, as a matter of law, that he acquired title to the land in controversy under the ten years' statute of limitation. R.S.1925, Art. 5510. That, however, is not the question for decision; and is only stated by way of better defining the real question.

One way of stating the question at issue is whether or not the case is different from the one just supposed solely by reason of the fact that Ben Roberson entered upon and took possession of the land under a deed so describing the land conveyed as not to include the land in controversy? Another way of stating the question is: Was it necessary for Ben Roberson, under the circumstances shown by the undisputed evidence, to cultivate, use or enjoy the particular land in dispute or a part of the same, each consecutive year during the required period of ten years without reference to, and independently of his cultivation, use or enjoyment of the land described in his deed?

■ The undisputed evidence, as well as findings of the Honorable Trial Judge, showed that Ben Roberson had had and held possession of the land in controversy for more than ten years in succession, or from the year 1883 to 1905. It is believed to be a sound proposition that an actual, visible and substantial enclosure of land is decisive proof of actual possession. 2 Tex.Jur. p. 90, sec. 46; Whitehead v. Foley, 28 Tex. 268, 285; McDow v. Rabb, 56 Tex. 154, 158; McDonald v. McCrabb, 47 Tex.Civ.App. 259, 105 S.W. 238; Young v. City of Lubbock, Tex.Civ. App., 130 S.W.2d 418, 420; Cantagrel v. Von Lupin, 58 Tex. 570; Dunn v. Taylor, Tex.Civ.App., 107 S.W. 952, 955. The word "possession" as here used does not mean the same as adverse possession. It does mean actual possession, as contradistinguished from constructive possession, in that the enclosing fences alone showed an actual visible and substantial appropriation of the enclosed land. 2 Tex.Jur. p. 74, sec. 39. The possession here spoken of must possess other characteristics, as will hereinafter be noticed in order to effect the bar of limitation. It is recognized that, as said in Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265, 268, "inclosure without use is not sufficient."

■ We next notice the rule or principle stated thus: "Possession of premises usually carries with it the presumption of a claim of title, and in that sense operates as notice to the true owner that his title is disputed." Boy v. McDowell, Tex.Civ. App., 207 S.W. 937, 938. See also Gillespie v. Jones, 26 Tex. 343; Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Cox v. Sherman Hotel Co., Tex.Civ.App., 47 S.W. 808—the latter declaring that "an adverse holder need not claim to own the land during his possession in order that the limitation may run in his favor." Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418; Masterson v. Pullen, Tex. Civ.App., 207 S.W. 537. This is in harmony with, as well as explanatory of, the statement in Texas Jurisprudence as follows: "Adverse possession is established, as a general rule, by proof that the land was enclosed by a fence during the statutory period; and this is true although ownership of the fence was in the record owner of the land." 2 Tex.Jur. p. 88, sec. 46. In Baker v. Fogle, 110 Tex. 301, 307, 217 S.W. 141, 219 S.W. 450, upon the authority of Rosborough v. Cook, 108 Tex. 364, 366, 194 S.W. 131, 132, relating to possession as notice of adverse claim, the Supreme Court said: "Under the ten years statute * * * it [notice] is afforded * * * simply by possession."

■ Such presumption could only operate, of course, in the absence of any evidence tending to show that it was in fact untrue. For a recent discussion, by the Supreme Court, of the effect of such a presumption as dispensing with evidence otherwise required; as also the effect of evidence rebutting such a presumption, see Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767. If, for example, there was evidence raising an issue that the one in possession was tenant

of the owner, as against such owner, the presumption would wholly cease to exist; and the burden of proceeding would be upon the one relying upon adverse possession to establish the fact. The same would be true upon the introduction of any evidence tending to rebut or refute the presumption by showing that the possession was not adverse.

Concerning the evidence in this case, while even if there was none to show affirmatively that Ben Roberson during the time of his possession as aforesaid claimed the land in controversy, neither was there any to show that he did not claim it; or, in other words, to refute the presumption arising from the fact of possession that he did claim it. If we are correct in this, then it is immaterial, as found by the court, that "the greater weight of the credible testimony fails to show that he [Ben Roberson] ever intended at any time to claim title or that he actually * * * claimed adverse possession of this 4.4 acres or any part of it." We think the uncontroverted evidence, supplemented by the unrebutted presumption above discussed, established conclusively that Ben Roberson had and held actual, peaceable possession of the land in controversy claiming it as his own for a period of nearly 22 years in succession.

Something more than such possession, however, was, by way of further corroboration, required. Peden v. Crenshaw, 98 Tex. 365, 84 S.W. 362. To have acquired title by limitation under the ten years statute (R.S.1925, Art. 5510), it was necessary that Ben Roberson, in addition to his possession, have cultivated, used or enjoyed the land in his possession for as long as 10 consecutive years. Id. The evidence established conclusively that he did cultivate, use or enjoy that part of the land in his possession which was described in his deed from Parmelia Turner for about 22 successive years. Whether he cultivated, used or enjoyed for ten years in succession the particular land in controversy, independently of his cultivation, use or enjoyment of the land described in said deed, was under the evidence an issue of fact. It was impliedly, if not expressly, found against Appellants and, if material, such finding is conclusive against them upon the question of their asserted title by limitation.

Had Ben Roberson by extending his fences to join with the Wyley fence, presumably with Wyley's consent, thereby effecting an enclosure of his land, have included within such enclosure land owned by Wyley, such facts alone would have rebutted the presumption hereinbefore discussed, namely, that Ben Roberson was claiming Wyley's land. The reason for this was well stated by Judge German in Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457, 461, 110 S.W.2d 555, wherein he said: "To hold that it did [show adverse claim] would in effect be saying that Maxwell [Wyley] was assisting Cohagen [Ben Roberson] to defeat his own title." The presumption arising upon such facts, instead of giving rise to the presumption of adverse claim, would give rise to the presumption of permissive possession—the very opposite of adverse possession. The reason stated in Judge German's opinion does not exist in the instant case. The rules and principles embodied in the doctrine of encroachment, as declared, for example in decisions like Bracken v. Jones, 63 Tex. 184; Titel v. Garland, 99 Tex. 201, 87 S.W. 1152, and Holland v. Nance, 102 Tex. 177, 114 S.W. 346, can have no direct application to the instant case. In our opinion, the fact is of no importance in this case that Ben Roberson effected the enclosure of the land by joining the fence of Wyley and thereby making it one side of his enclosure. As affecting the present controversy the result would have been the same had there been no fence where Wyley's fence was, and Ben Roberson had built it the same as on its other three sides, in the same place. This will more clearly appear when it is considered that the same question stated in the two ways, as aforesaid, would still remain.

On the question of legal title, we have already endeavored to show that the real intention, not expressed, of Parmelia Turner and Ben Roberson as to the land conveyed was immaterial. If, however, such intention had been material, it is believed there was evidence which would support a finding that the land in controversy was intended to be included in the conveyance. Such intention would explain two other important facts involved in the question of limitations. It would explain why Parmelia Turner, during her lifetime, and her heirs after her death, all together for about 40 years, made no claim to the land in controversy. It would also explain why Ben Roberson took possession of it as he did by his enclosure with the land described in his deed. These things are, however, not of controlling importance upon the real ques-

tion at issue which is one of law and not of fact.

 Whether Parmelia Turner, and after her her heirs, had actual knowledge that the land in controversy had not been conveyed to Ben Roberson, the law, in effect, charged them with knowledge of its location, boundaries, and the fact that Ben Roberson had taken possession of it. Brownson v. Scanlan, 59 Tex. 222, 226; Scott v. Rodgers, Tex.Com.App., 6 S.W.2d 731, 734; Wilson v. Seigel, Tex.Civ.App., 167 S.W. 1090. They were bound to know that they could not go upon their own land, or make any use of it, without breaking the enclosure, and thereby becoming trespassers. Parmelia Turner had no occasion to go to the deed records for an explanation of Ben Roberson's possession, since there she could expect to find only her own deed. The enclosure itself charged her with knowledge that the possession of Ben Roberson of the land in controversy was not alone referable to the deed, being without the boundaries described in it. It is sometimes the case that the evidence of the cultivation, use or enjoyment of land is at the same time the only evidence of possession. Here the evidence *of possession* was conclusive regardless of any question of cultivation, use or enjoyment. Where the evidence of cultivation, use or enjoyment is the only evidence of possession or the extent or continuity of possession, it is readily understandable that the extent of the cultivation, use or enjoyment at once measures the extent of possession; the continuity of the cultivation, use or enjoyment determines the continuity of possession. In this case, the fences marked the extent of possession. The time the fences existed marked the continuity of possession.

Different from most cases is this one in that no question of constructive possession is involved. Neither Parmelia Turner, nor her heirs, had constructive possession of the land in controversy, since it was not adjacent to, nor formed part of any other land in their actual possession. Ben Roberson's possession was not a constructive possession but actual possession, and corroborated by proof of cultivation, use or enjoyment, was adverse possession. In Evitts v. Roth, 61 Tex. 81, the court quoting from Cunningham v. Frandtzen, 26 Tex. 34, 38, said: " 'It is well settled that a party in possession, with improvements and inclosure, holds to the extent of his inclosure *by what is termed actual posses-*

*sion;* and if at the same time he holds under deed or title, he holds to the extent of the boundaries of his deed or title, *outside of his actual possession,* by what is termed constructive possession." (Italics ours.) See also Chandler v. Rushing, 38 Tex. 591, 596; Ramirez v. Smith, Tex.Civ.App., 56 S.W. 254, 259. No owner of land is under any duty to consult deed records to determine whether any person is claiming his lands. The only occasion to consult the deed records is when he finds someone in the actual possession of his lands. The only function of deed records as relating to the subject of limitation is to give notice of constructive possession beyond an actual possession. As already said, no question of constructive possession is involved in this case. The land in dispute, if in possession of Ben Roberson at all, was in his actual possession. So far as we can see, Ben Roberson's enclosure afforded as reliable information, and was just as effective to give notice of the nature of his claim as the deed records could have done. Even in the cases involving the doctrine of encroachment before cited, it seems to have been conceded that limitation title to the enclosed land was acquired by the one in actual possession by enclosure. In R. W. Wier Lumber Co. v. Eaves, Tex.Com.App., 296 S.W. 481, there was no discussion of the time or continuity of the cultivation, use or enjoyment of the particular land involved in the encroachment, as distinguished from other land in the same enclosure; but limitation was sustained as to land in actual possession. In Bracken v. Jones, supra, limitation to the land enclosed was sustained. In Craig v. Cartwright, 65 Tex. 413, it was held that the peaceable, naked possessor may hold what he has actually enclosed, though it exceeds the area to which his possession would be construed to extend from an occupation of only a part of the area named in the statutes. In Bisso v. Casper, 14 Tex. Civ.App. 19, 36 S.W. 345, it was held that where one purchases land enclosed by a fence and claims title to all within the enclosure, his possession is adverse as to the whole tract, though he believes he is only claiming to the extent of his deed, which in fact does not enclose all the land so fenced. To the same effect, see Hand v. Swann, 1 Tex.Civ.App. 241, 21 S.W. 282. In these cases the deed although, as here, including less land than that actually occupied was not held to have the effect of destroying the adverse nature of the pos-

session of the land within the enclosure, but not within the deed.

■ Although it must be admitted that the question involves much difficulty, we believe where the undisputed facts are as they here appear to be, there being no question of encroachment, no question of constructive possession, no facts implying a possession by consent, or other questions so frequently complicating the subject of adverse possession, that it was not necessary that the evidence show an independent cultivation, use or enjoyment of the particular land in controversy, apart from the cultivation, use or enjoyment of the tract of land as defined by the enclosing fences.

It is, therefore, our conclusion that the motion for rehearing should be overruled. It is so ordered.

On Second Rehearing.

Appellees' second motion for rehearing has been duly considered upon its merits and is overruled.

A special point is made upon that part of the opinion on first rehearing reading as follows: "Had Ben Roberson by extending his fences to join with the Wyley fence, presumably with Wyley's consent, thereby effecting an enclosure of his land, have included within such enclosure land owned by Wyley, such facts alone would have rebutted the presumption hereinbefore discussed, namely; that Ben Roberson was claiming Wyley's land." In so saying we were not unmindful of the fact elsewhere stated in the opinion that the deed from Parmelia Turner to Ben Roberson included two small tracts of land belonging to Wyley. By the above language is meant that in any contest between Wyley and Roberson, the facts as stated would have rebutted the presumption. The record does not show that any contest ever arose between Wyley and Roberson, or those claiming under them, and in fact when Roberson sold the land, he sold it to Wyley, thereby forestalling any such question ever arising. We merely meant to point out by way of illustration the difference between the relation that existed as between Parmelia Turner and Roberson and that between Wyley and Roberson. That Roberson's possession as between him and Wyley was permissive and presumptively not adverse, without that being true as between the parties involved in this suit, we think

is sustained by the decision in Burnhan v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139.