### FIRST NAT. BANK OF SNYDER v. EVANS et al.
### No. 2335.

Court of Civil Appeals of Texas. Eastland.

Feb. 26, 1943.

Rehearing Denied March 26, 1943.

Mays & Perkins, of Sweetwater, for appellant.

Stubbeman, McRae & Sealy, of Midland, for appellees.

FUNDERBURK, Justice.

J. W. Evans and others—all the heirs of W. J. Evans, deceased, and of Belle Ann Evans, deceased—brought this suit against the First National Bank of Snyder, Texas (hereinafter referred to as the Bank), to establish plaintiffs' ownership of an undivided one-half interest in and to all of the oil, gas and other minerals in a certain described tract of land in Scurry County and to recover royalties from oil produced from said land. The land formerly was owned by W. J. Evans and others, and was by them conveyed to said bank in settlement of a debt secured by a deed of trust lien upon the land. "As one transaction [with the above] or as connected and related transactions", said Bank by W. D. Sims, Vice-President, executed to W. J. Evans a written instrument, the material provisions of which are as follows:

"The State of Texas
"County of Scurry

"Know All Men by These Presents:

"That the First National Bank of Snyder, Texas, of the County of Scurry, State of Texas, has, and by these presents does

grant, bargain, sell, convey, set over and assign and deliver unto W. J. Evans the following to wit: undivided one-half interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Scurry County, Texas, to wit: * * * [Here follows description of the land].

"It is agreed and understood that the First National Bank and its successors and assigns shall have exclusive right to lease the above described lands for oil, gas or other minerals, but the said W. J. Evans and his heirs and assigns shall be entitled to one-half the proceeds of any oil, gas or other mineral lease, *so long* as the said W. J. Evans shall live, or his wife Belle Ann Evans shall live or either of them.

together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom * * *."

[The succeeding two paragraphs are parts of a printed form with blanks not filled, the only change in the printed form being the substitution of the word "not" for the word "now" in the following sentence: "And said above described lands being now under an oil and gas lease originally executed in favor of———and now held by———."]

The habendum provision, with matters written with typewriter into the blanks of the printed form shown by italics, reads as follows: "To Have and to Hold, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said *as set out above* W. J. *Evans,* heirs and assigns xxxxxxx and ——— do hereby bind ourselves, heirs, executors, and administrators to warrant and xxxxxxx defend all and singular the said property unto the said W. J. *Evans,* hxixx xxd xxxigxx against every person whomsoever lawfully claiming or to claim the same or any part thereof. *as set out above."*

Mrs. Belle Ann Evans died intestate on January 27, 1937. W. J. Evans died intestate on April 17, 1941. For the month of May, 1941 (the month following the death of W. J. Evans), the Bank collected royalties for oil produced from said land, one-half of which amounted to $101.92.

In a non-jury trial the Court gave judgment awarding plaintiffs a recovery of one-half of the oil, gas and other minerals in said land, subject to leases executed by the Bank, and further awarding recovery of said sum of $101.92 as one-half the royalty collected by the Bank; but in the judgment declared that plaintiffs were not entitled to any part of rentals or bonuses on future leases which the judgment declared the Bank had the right to make.

The Bank has appealed.

The Bank contends, in effect, that the instrument, material parts of which are set out in the above statement of the case, is a conveyance of a life estate in one-half of the oil, gas and other minerals in the land. It is implicit in that view that such life estate was measured, not by the life of W. J. Evans alone, nor by the life of Belle Ann Evans alone, but by the life of the survivor of the two. In that view the words "heirs and assigns" following the name of W. J. Evans as the grantee was in recognition of the possibility that the life estate granted might survive the death of W. J. Evans, which it would, of course, if his wife, Belle Ann Evans, should survive him. In the latter contingency the heirs or assigns of W. J. Evans at his death would have succeeded to the remainder of such life estate, or, in other words, to that part of its total duration extending from the death of W. J. Evans to the death of Belle Ann Evans. It is further implicit in appellant's contention that at the death of the survivor, whether W. J. Evans or Belle Ann Evans, the ownership of the land by the Bank or its successors or assigns by fee simple title thereafter existed, unburdened or undiminished by said life estate, the same as it existed before the execution of the instrument under consideration. If such be the legal effect of the instrument in question, then it would follow, of course, that royalties wholly accruing after the termination of the life estate—as did the $101.92—would be the property of said Bank or its successors or assigns.

On the other hand, it is the contention of appellees that the instrument in question is a conveyance of a one-half undivided interest in the oil, gas and other minerals in the land, having the effect of vesting in the grantee the fee simple title to said minerals; that the Bank reserved the power to execute leases of the land

for oil, gas and other minerals, such power limited, however, to the life time of W. J. Evans or Belle Evans, whichever one was the survivor; that upon the death of such survivor, such one-half interest in the oil, gas and other minerals in the land, in the absence of any prior devise or conveyance thereof, became the property of the heirs of said W. J. Evans, freed of said power of the bank to make future leases. It is implicit in this view that the $101.92, although it accrued after the death of W. J. Evans and Belle Ann Evans, accrued, nevertheless, under a lease authorized under said power of the Bank to make leases and was, therefore, the property of the plaintiffs.

The trial court, adopting neither view in full, adjudged that plaintiffs, as heirs of W. J. Evans, owned the one-half interest in the oil, gas and other minerals in fee simple, and awarded them recovery thereof, as well as of said accrued royalties in the sum of $101.92, but construed the reserved power of the Bank to make leases to survive the death of W. J. Evans and Belle Ann Evans and to entitle said Bank, its successors or assigns, to delay rentals and bonuses under future leases; its only obligation being to pay to plaintiffs the royalties provided in any such leases. In the Court's view, the right of the grantee or his heirs and assigns to an interest in delay rentals or bonuses terminated with the death of W. J. Evans and Belle Ann Evans.

■ At the threshold of the inquiry here involved, it may be well to remind ourselves that the objective is to ascertain the intention of the parties to the written instrument in question, which we may call a mineral deed. Even this statement requires some restriction in this; it is not the intention which the parties may have had, but failed to express, if any, but the intention which by said instrument they did express. See authorities collated in Stewart v. McKee, Tex.Civ.App., 150 S.W.2d 415.

■ The intention expressed in the deed is to be sought from a consideration of the entire instrument, all of its provisions. It may even be sought from consideration of the provisions of other instruments, if any, executed contemporaneously therewith and relating to the same general subject matter. For example, according to allegations of plaintiff's petition, "as one transaction or as connected and related transactions", the mineral deed in question was executed with some relation to the deed by which W. J. Evans and others conveyed the land to the Bank in payment of a debt secured by a lien on the land. If useful or necessary, that deed, we think, may be looked to in search of the intention expressed in the mineral deed. Considering both deeds, it appears that the mineral deed actually performed the function of an exception from the subject matter in the other deed. Patently, it was the means of taking something back to W. J. Evans from that which was contemporaneously conveyed by W. J. Evans and others to the Bank. But for the fact that other grantors joined W. J. Evans in the conveyance to the Bank, it is apparent that the subject matter of the mineral deed could easily and conveniently have been excepted and/or reserved from the subject matter of the deed to the Bank.

■ One important element of the subject matter in a conveyance of land is the duration of the estate granted. When the duration is not expressed, a question concerning it may be materially affected by a presumption, resulting from the provisions of a statute (R.S.1925, Art. 1291). That statute provides: "Every estate in lands which shall thereafter [hereafter] be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

■ Aided by the presumption created by said statute, the granting words of the deed, namely: "Has and by these presents does grant, bargain, sell, convey, set over, and assign and deliver unto W. J. Evans the following to wit: Undivided one-half interest in and to all of the oil, gas and other minerals", etc., absent anything to show a contrary intention, import a transfer of the ownership of such mineral interest by fee simple title. It is, therefore, next in order to consider whether there is anything else expressed in the deed showing a different intention, or, if not clearly so, whether by construction a lesser estate appears to have been conveyed.

The parties used a printed form containing blanks designed to be filled in so as to express the terms of the particular conveyance. In the printed form is a haben-

dum provision designed to show expressly the duration of the estate granted and to show that such duration was to be "forever". This word "forever" is X'ed out, thereby negativing any intention that the duration of such estate was to be forever. As expressing the duration of the estate there was substituted for the word "forever", the words "as set out above". Thus it appears that, whether right or wrong, the parties considered that something in the deed preceding these words was, when adopted for such purpose, sufficient to show the duration of the estate as being something less than "forever"; or, in other words, something less than fee simple. Under the statute above quoted, it is permissible, and our duty in the premises, to consider (1) whether an estate less than fee simple has been limited by express words, and (2) if not, has a less estate been granted or conveyed "by construction".

The only thing "set out above", which could reasonably be supposed to have been regarded as an alternative to an endurance of the estate "forever", is the provision reserving to the Bank the power to execute leases. The first clause of that provision is as follows: "It is agreed and understood that the First National Bank and its successors and assigns shall have the exclusive right to lease the above described lands for oil, gas or other minerals * * *." Had this been all of the provision upon that subject, the rights of the parties would have been left in considerable doubt. Obviously for the purpose of showing that such a provision was not a complete contradiction of the granting words, the same sentence continues with this clause, to wit: "but the said W. J. Evans and his heirs and assigns shall be entitled to one-half the proceeds of any oil, gas or other mineral lease * * *." This part of the provision is plainly a reserved power by the Bank, in the nature of a power of attorney, to make leases for the grantee, of his interest in the land, and, therefore, involving as between the Bank and the grantee a relation of trust, obligating the Bank to account for and pay one-half the proceeds of leases executed in exercise of such power. But there would be nothing in either or both of said clauses which could reasonably have been regarded by the parties as specifying the duration, either of the grant, or the exercise of such power. Following the clause last quoted is the following: "*So long* as the said W. J. Evans shall live, or his wife, Belle Ann Evans, shall live, or either of them." Here clearly is a duration-limiting provision. The duration period is certain. It is the life of W. J. Evans or Belle Ann Evans, whichever one is the survivor of the other. To what does the limited duration apply? Undoubtedly it applies either to the duration of the Bank's reserved power to lease, or to the right of Evans or his heirs or assigns to receive one-half the proceeds of any oil, gas, etc., lease or the estate granted. In our view, it makes no difference to which of these it was intended to refer, because it was *expressly* adopted as a limitation upon the duration of the estate granted, as evidenced by the X'ing out of the word "forever" as marking such duration, and the substitution of the words "as above set out."

The intention to limit the duration of the estate to something less than "forever", or fee simple, is further evidenced, we think, by the striking out of the word "forever" and the words "heirs and assigns", and by the addition a second time of the words "as above set out" appearing in the warranty provision. It seems clear to us that by the words of reference "as set out above", substituted for the word "forever", as stating the duration of the estate granted, the parties by express words limited a less estate than fee simple, and if there was any lack of clearness in expressing such limitation, then it nevertheless appears that "by construction" only a life estate was conveyed.

If this conclusion be correct, then it follows that royalties which accrued after the death of W. J. Evans were the property of the Bank, and not of the plaintiffs. Plaintiffs showed no rights which survived the death of W. J. Evans, at whose death, as the survivor of Belle Ann Evans, the Bank's interest in the land again became the same as just before the execution of the mineral deed.

It becomes unnecessary to consider the other questions presented. In our opinion, the judgment should be reversed and judgment rendered that plaintiffs take nothing by the suit. It is accordingly so ordered.